*Hogeboom *vs.* Hall. [ *146 ]

Where a testator gives a farm to his son in fee, *upon condition* among other things that his daughters shall have the use and occupation of a room in his dwelling house, and be provided with food, raiment and fuel as long as they remain unmarried, and there be *a breach of condition*, an action of ejectment lies by the daughters for the recovery of the shares of the farm to which they would have been entitled as the children of their father.

Such condition is annexed to the estate, and binds the land, in whose hands soever it may be.

To work a *forfeiture* of the estate in such case, there must be something more than *a mere denial of the right*; there must be some *act* done, as *shutting up the house*, &c. Great strictness is required where the forfeiture of an estate is sought.

This was an action of *ejectment*, tried at the Columbia circuit in April, 1839, before the Hon. John P. Cushman, one of the circuit judges.

The plaintiff, Gertrude Hogeboom, as one of six children and heirs at law of *Johannes Hogeboom*, who died about the year 1814, seized of a large farm, of which the premises in question are a part, claimed to recover an undivided sixth part of the farm. The father of the plaintiff left a will, by which, among other things, he devised all his *real estate* to his wife Gertrude as long as she should remain his widow; and after the death or marriage of his wife he gave and devised unto his son *Stephen, in fee,* all his real estate, " *upon condition, and with the proviso and restrictions* that he pays so much of *honest debts*, and *funeral charges*, and pays the *legacies and supports my daughters Gertrude and Helen as is hereinafter mentioned.*" He then gave several legacies; and in relation to his daughters *Gertrude* and *Helen*, he provided as follows: " I direct that [after the death of my wife] they shall reside with the family of my son *Stephen*, or have the use and occupation of my east upper room, as they choose: and I direct that son Stephen, his heirs, executors or administrators support them with good victuals, drink and every day apparel, and provide them with sufficient fire wood, ready cut to put on the fire, as long as they remain in the situation above mentioned, [unmarried.] And in case *any dispute shall arise between them concerning their sup- [ *147 ] port, and as often as it may arise, it is my desire that two or more disinterested persons be appointed by the surrogate of the county of Colum-

bia to enquire into the matter, and if in their opinion, or in the opinion of two of them, that they are not supported or provided for as before directed, then and in such case it is my desire that the persons thus chosen or appointed, or any two of them, award, order and determine *in what manner particularly* they shall be maintained and supported by and at the expense of my said son ; and such award, order and determination, made in writing, shall be binding and conclusive : and the expenses attending such appointment and determination shall be paid, the one half by my son Stephen, his executors or administrators, and the other half my daughters Helen and Gertrude."

The widow of the testator survived him several years, but the time of her death does not appear. *Stephen* occupied the farm after his father's death, until his own death in March, 1834. He left a will, by which his executors were empowered to sell the farm ; and on the 1st April, 1835, they sold and conveyed it to *John L. Hogeboom*, who, on the 1st April, 1836, sold and conveyed the farm in two separate parcels—one part to *Thomas F. Mesick* —and the other part, being the premises in question, to the *defendant*—with covenants of warranty. The mansion house in which *Johannes* lived was on that part now owned by *Mesick*. It was re-built prior to 1834.

*Stephen Hogeboom* paid the testator's debts and funeral charges, and the legacies given by the will of *Johannes*. After her father's death, the plaintiff lived in the family of Stephen, and was supported by him, until about the year 1823, when she and her sister Helen purchased real estate in Montgomery county, where they had friends, and went there to live, with the intention of residing there permanently. They have lived there ever since, with the exception of two or three visits to Stephen. One of those visits ended in February, 1826. They came again to Stephen's in 1829 or 1830, and stayed a year, and in October returned to Montgomery. They [ *148 ] came again on a visit in the fall of *1833, and stayed until June following, eight months, when they left. Some time before they left, Stephen told them, if they called it a visit, he thought they had stayed about long enough ; he said, he thought they had no right there, because they had gone away of their own accord, and had long ago lost all claim under the will. They left about two weeks after this conversation. This was after the death of the widow of Johannes. These facts were proved by *Mary Hogeboom*, the widow of *Stephen*.

The judge refused a motion for a nonsuit, and ruled against the defendant on all the points made. Among other things, he instructed the jury, that the testimony of *Mary Hogeboom*, if the jury believed it, furnished sufficient evidence of a demand for support and other privileges under the will, and of such refusal on the part of Stephen to fulfil, as forfeited the estate : that if the jury believed the testimony, the plaintiff was entitled to recover one-sixth part of the premises in question. *Exceptions* were duly taken. Verdict for the plaintiff. The defendant moves for a new trial on a bill of exceptions.

*H. Hogeboom*, for defendant

*M. T. Reynolds*, for plaintiff.

*By the Court*, BRONSON, J. The provision in the will of Johannes Hogeboom for the support of his two daughters Gertrude and Helen, is something more than an *equitable mortgage* or *charge* on the land. The testator has used apt words of *condition*, and I find nothing in the will to limit or control their effect. There can be no doubt that Stephen held the estate on a condition subsequent; and if the condition has been broken, the estate is forfeited, and belongs to the heirs at law of the testator.

II. The condition was annexed to the estate as a part of the tenure, and would, of course, affect the land into whatever hands it might pass. It would be strange indeed if one holding lands by such a tenure, could defeat the condition by granting to another. If a requisition for that purpose is *made upon the present tenants, they must, as far as    [ *149 ] the nature of the case will permit, perform the condition. If they refuse, it will be at the peril of losing the estate. *Co. Lit.* 246 *b. Bradstreet* v. *Clark*, 21 *Pick.* 389. 4 *Kent*, 126. If there was a forfeiture in the lifetime of Stephen, neither his death, nor the subsequent alienation, can defeat the right of entry of the heirs at law of Johannes Hogeboom. In short, so long as Gertrude and Helen live, the estate, whether in the hands of Stephen, or of persons claiming under him, is held upon condition ; and any forfeiture which may have happened, unless it has been released or barred by the lapse of time, may be asserted, against any one in possession of the land. A different doctrine would entirely change the nature of the tenure.

III. The voluntary departure of Gertrude and Helen to the county of Montgomery, and remaining there several years with the intention of making that the place of their permanent residence, did not put an end to the condition, nor preclude them from returning and demanding a performance, for the future, on the part of Stephen. He was bound to support them as long as they lived and chose to reside in his family. Their *absence for* a time could work no injury to him, whatever may have been the intention with which they left ; and although he was not bound to act while they were absent, he was under a continuing obligation, which would operate on a request made, and could only be discharged by performance, or a release. If the right to support could be renounced, or the condition could be released, without a deed, I think it quite clear that a silent departure could work no such consequence. Indeed, if there had been an express agreement to relinquish the claim for support, it would have been necessary to show that it was made upon good consideration.

IV. If on a demand made, by the two daughters of the testator, support was *wholly refused* by Stephen, the condition was broken, and it was not

necessary to resort to the surrogate before, or as a means of, asserting the forfeiture. After giving the land to Stephen, on condition that [ *150 ] he supported the daughters "as is hereinafter mentioned," the *testator went on to specify the manner in which they should be supported; and anticipating that disputes might possibly arise between the parties in relation to the *particular manner* in which the daughters might be provided for, he pointed out the .mode in which such differences should be adjusted. The testator did not intend to refer to the surrogate, or to any appointed by him, to say whether Stephen should support the daughters. He had settled that question himself. But although the daughters might be provided for by Stephen, disputes might arise concerning *the sufficiency or reasonableness* of the provision; and those differences, and those only, the the testator intended to have referred to persons appointed by the surrogate.

V. I see no difficulty in the plaintiff's case, until we come to the evidence upon which she relies for the purpose of making out a forfeiture; and here I differ verywidely from the judge at the circuit. It is quite possible that some portion of the evidence has been omitted in making up the bill of exceptions; but on the case as it is presented to us, the evidence of a demand for support under the will, and of a refusal by Stephen, is so far from being *conclusive.* on the question of forfeiture, that it would not, I think, have warranted a verdict for the plaintiff, had the question been submitted to the jury. Conditions which destroy an estate, are taken strictly; and although a forfeiture must be enforced when clearly established, it should not prevail upon doubtful construction of evidence. If anything is to be done as a condition precedent by the party who asserts the forfeiture, he must show a strict performance on his part; and this is so, whether the obligation upon him is created by express stipulation, or is implied by law from the nature of the act to be peformed by the other party. He who may lose by a breach of a condition, must be plainly put in the wrong; and mere words on his part, as a denial of the right, without any act done, will not always work a forfeiture. I shall only refer to a few cases in support of these positions. *Maund's case,* 7 *Co.* 112. *Fraunces' case,* 8 *id.* 177, also reported by the name of *Miller* v. *Francis,* 2 *Brownl. & Gold.* 277. 9 *Co.* 51. *Ba-*[ *151 ] *con's Abr. Condition* *(*O), 1. *Comyn's Dig. Condition* (*N*). *Bradstreet* v. *Clark,* 21 *Pick.* 389. In this last case, the court acted upon a distinction, which I think a sound one, between a demand for the purpose of laying the foundation of a suit to recover money, and a demand which is to work the forfeiture of an estate, and held that there must be much greater strictness in the latter than is required in the former case. The estate was held on condition that the devisee paid certain legacies, and because all the legacies were demanded, when two had been paid, the demand was held insufficient, although the tenant denied the right altogether.

The niceties which are required at the common law in making such a demand as will authorize a re-entry for the non-payment of rent, is a familiar example of the great strictness which is required where the party seeks to inflict the heavy penalty of a forfeiture of the whole estate.

Now, what is the evidence in this case to establish a breach of the condition ? Ten years before the conversation on which the plaintiff relies, she and her sister voluntarily left the house of Stephen, went to Montgomery and purchased real estate, with the intention of residing there permanently ; and there they had resided for the whole ten years. Although they went occasionally back to Columbia, and made pretty long *visits*, the case furnishes no evidence that they did so with the intention of changing their place of residence. When the conversation took place in June 1834, they had been with Stephen seven or eight months ; but the case states that they came *on a visit ;* and there is not one particle of evidence going directly to prove that they made any demand or request whatever upon Stephen, or that they even intimated the intention of remaining with him for the purpose of receiving the support provided for by the will. In fact, it does not appear that they had made up their own minds to pursue that course ; and for aught which can be gathered from the case, they would not have remained with Stephen, if he had requested them to do so. True, Stephen told them, " he thought they had no right there, because they had gone away of their own accord, and had long ago lost all claim under the will ;" and if those *words stood alone, they would furnish some ground for [ *152 ] a presumption that the daughters had made a demand or request. But when taken in connection with the preceding words, little if any thing remains of the presumption. Stephen began by saying, " if they called it a *visit*, he thought they had stayed about long enough." It seems probable from this, that a *visit* was the only thing of which the daughters had spoken.

The plaintiff insists on a forfeiture, and the burden lies upon her of showing the condition broken. After it appeared that she had changed her residence to Montgomery, it was necessary for her to show, beyond all reasonable ground for doubt, that she returned to the house of Stephen for the purpose of receiving the support provided for her by the will ; and that she plainly made known her intention to Stephen. She could not act equivocally, and leave him in doubt whether she was there *on a visit* or *under the will*, and then construe his words, which included both views of the subject, into a breach of the condition. And besides, when Stephen told the daughters he thought they had no right there—that they had lost all claim under the will—they seem to have acquiesced in his opinion. They made no reply or objection to the remark. They left him at liberty to believe that they were only there for a temporary purpose, without intending to claim any thing under the will, and went away two weeks afterwards without correct-

ing that impression ; and now after he is dead, and the farm has gone into the hands of others, they insist that Stephen forfeited the estate.    That will ' never do.   They were bound to speak at the time.   What Stephen said amounted to little more than the expression of his *opinion ;* and if such words could under any possible circumstances amount to a breach of the condition, they certainly could not work. any such consequence, when they were apparently acquiesced in by the other party.   If the daughters had answered by asserting their claim, it is highly probable that Stephen, whatever might be his opinion about the matter of right, would have furnished the support, so as to avoid all question about the title to the farm.

[ *153 ]     But however that *may be there is not sufficient evidence that he ever refused compliance with the terms of the will.

We might have omitted the expression of an opinion upon the other points in the cause ;  but the counsel for both parties were desirous that all of the questions presented by the bill of exceptions should be considered, for the purpose of narrowing the grounds of controversy on anot her tiial

New trial granted.